Samuels, J.
This case is brought here by writ of supersedeas to a judgment of the Circuit court of the of Richmond, rendered in an action of assumpsit for money had and received. The object of the suit is to recover money alleged to have been improperly aggegge¿ as a cj£y £ax on certain rail road stocks held by the defendant in error and paid by him. This court has jurisdiction under article 6, § 11, of the constitution. The facts are agreed between the parties, and made part of the record; and it was further agreed by them, that if the defendant in error had not been bound by law to pay the tax assessed, or any part of it, judgment should be rendered in his favor for so much of the money as he had not been bound by law to pay. Thus the parties by consent submitted to the court a question of law, and by like consent the judgment was to be in favor of the party with whom the law was on that question.
The consent of parties withdraws the case from the rule declared in Mayor, &c. of Richmond v. Judah, 5 Leigh 305, if the protest under which the money was paid would not have had the effect of so withdrawing it.
The only question is, Whether the city council, acting under the charter of the city of Richmond, had authority to' assess the taxes on rail road stock held by the defendant ? The chartered powers of the city, so far as involved in this case, are created and defined by the statutes, ch. 335, p. 259, Sess. Acts 1852; and chapters 54 and 56 of the Code of Virginia.
In order to ascertain the extent of the powers granted, it is necessary to know the general principles ruling the construction of such grants. The power in question is of the class merely derivative, and to be distinguished from the class of original and sovereign powers. Each class has its own rules of construction. The first named having power only in *387 derogation of common right, being merely carved out of the power theretofore vested only in the general assembly, its powers are to be strictly construed. 2 Kent’s Com. p. 298; Grant on Corporations 7 and 8; Richmond, &c. R. R. Co. v. Louisa R. R. Co., 13 How. U. S. R. 71. Especially is the power of taxation, when granted to a subordinate body, to be strictly construed. The powers of the second class are illustrated in the general assembly. That body is invested with the sovereign power of taxation pertaining to the whole commonwealth, with only the limits prescribed by the mandates or the prohibitions of the constitution. The council of the eity of Richmond can exercise no power of taxation unless granted by charter; the general assembly may exercise all power of taxation not prohibited by the constitution; and it may omit to exercise the power, unless compelled to act by mandate of the same instrument.
That the general rule of strict construction is to be applied to charters, seems free from doubt; and I find nothing to warrant a different rule in regard to the eharter of the city of Richmond. -In section §5 of the charter it is enacted, that “ In all eourts this act shall be construed as favorably for the city as the nature of the case will admit of.” In regard to this section, it must be said, that “ every case,” “ in all courts,” in its “ nature,” is made up of the very facts thereof, and of the mere law upon the facts; there is no case, and can be no case, which, in its,nature, allows any judgment other than that required by the law upon the facts. When, therefore, the section refers to the nature of the ease as the measure of favor, it refers only to that which would have controlled the decision, if no favor had been required. If there be any difficulty in prescribing definite legal limits to the operation of the section in question, still it is enough for the purposes sfi this case to decide that it does not .confer any *388 power which would not have existed if the section ^een omitted from the charter.
The validity of the assessment is denied by the defen(iant in error, because the council had no authority to make it: and because if this would have been other- . wise on the general grants of power, still his stocks m the rail roads (Seaboard and Roanoke and Richmond and Petersburg) are exempt under the respective charters of these rail roads. In this position of the controversy it is incumbent on the plaintiff in error to show an authority in the city council, under its granted powers, to make the assessment. If this be done successfully, it will then be incumbent on the defendant in error to make good his claim to exemption.
We are referred to several portions of the charter, and of the statute, ch. 54 of the Code, as giving the power claimed. I shall consider each of these alleged sources of power in its turn.
It is said that section 36 of the ebarter, giving power to tax personal property within the city other than slaves under the age of twelve years, gives the power to tax the rail road stocks above mentioned held by the defendant in error, who resides within the city. In answer to this claim, it may be said that it is a material question whether these stocks be personal property within the meaning of the general assembly when exercising the tax laying power ; for the word when used in the charter is to bear the same signification as when used in the state tax laws. A careful reading of alt the tax laws passed since the adoption of the existing constitution, has left no doubt on my mind as to the meaning of the general assembly when imposing a tax on personal property j it is not understood as embracing every thing of a personal nature which one may own, to the exclusion of all others. In Sess. Acts 1852, <§ 2, p. 14, we find the first tax law under the existing constitution. Personal property is mentioned *389 as a subject of taxation. Moneys and credits are also mentioned separately, as subjects of taxation. Again, money itself is subjected to different rates of to be ascertained by reference to the source from which it was received. If the general assembly had regarded all these subjects as property, then the discrimination in rates of taxation would be a palpable infraction of article 4, § 22, of the constitution. If, however, we suppose that the legislature properly used the word “ property” in its popular sense, meaning visible subjects, then no violation of the constitution was produced by the tax law. The subsequent tax laws are substantially the same in the particulars above mentioned. It is not material in this case to consider whether the state tax laws are in conformity with the constitution ; our only enquiry is, What meaning did the general assembly attach to the word “property,” when itself exercising the power of taxation ? Whatever the meaning was, we must hold it to be the same when used in granting power of taxation to a subordinate authority. It would therefore seem that rail road stocks are not taxable under the denomination of property.
If, however, I am wrong in this, still the question recurs, Are these rail road stocks property within the city? To sustain the affirmative of this question, the counsel for the plaintiff in error relied only upon the argument that personal property and especially dioses in action are of the place at which the owner resides. In regard to goods and chattels, the tax laws regard them as of the place at which they may be, and accordingly direct that taxes be assessed and paid at that place. If it be conceded that credits due to a party are, for some purposes, even for the purpose of taxation, of the place of the owner’s residence, it would still remain to be shown that rail road stocks in themselves are credits. These stocks are only evidence *390 that if in future dividends shall be declared, the holder entitled to a ratable share; and moreover, that case the corporation be dissolved, the holder will be entitled to a ratable share in the surplus, if any remaan after discharging superior claims. These claims possess no ingredient in common with credit. This last never exists without a debtor, nor without a sum to be paid, nor without a time of payment, not one of which has any sort of connection with rail road stocks, the specific subject of taxation in our case. After dividends shall have been declared, they (unless exempt) would be classed with such liquidated demands as are taxed under the name of credits, or otherwise, as provided by the law at the time. The dividends not yet declared being of uncertain existence as well as uncertain in amount, cannot be taxed as credits, which by the terms of the tax laws must have actual existence, and be taxed on the amount. Nor can the remote and contingent claim to a share of the corporate effects after dissolution, be relied on as assimilating rail road stock to a credit. The charters are without limit of duration, and thus the claim is postponed indefinitely; it is uncertain, and cannot be classed with such liquidated claims as are taxed under the name of credits.
In further support of the power of taxation, the counsel for the plaintiff in error relied on § 19 of chapter 54 of the Code, insisting that rail road stocks may be classed with those “other subjects” not specifically enumerated, on which tax may be assessed. This argument cannot prevail, unless it be shown that the rail road stocks in question had been, in the language of the law, “at the time assessed with state tax against the owner residing in the town.” This has not been shown, and cannot be shown, as no state tax has been so assessed on rail road stocks. It has been said that although no state tax on such stocks *391 has been required by law, still if the state might impose the tax, so may the city council. It would be an idle labor in the general assembly to prescribe limits to powers of taxation, by referring to its own state laws for a designation of subjects, if the power is not to be measured by the law referred to, but to be coextensive with the sovereign power of taxation vested in the general assembly. To carry this pretension to its results, we must hold that the property included in the exempting clauses of the state tax laws, may still be taxed under city ordinances; for these exemption clauses may be repealed by the general assembly. In fine, we must hold that the sovereign power of taxation within the city is vested in the council; and, according to the argument of the counsel on another branch of the case, never to be resumed by the general assembly. This would be giving a construction far more liberal than has ever been applied to a grant of any kind by a superior to an inferior authority.
It has been said that, although the city council can impose a tax on such subjects only as may be assessed, at the time with state tax, still the city tax need not necessarily be in the same form as the state tax; and in illustration of the position, it is said, as the state taxes rail road corporations (when not exempt) on property, or dividends, or on all passengers carried, at the rate of a mill per mile, therefore the city council may tax, not the rail roads (they not being in the city), but individual stockholders in the city. There is a wide difference, a total absence of identity between the individual property of the stockholder and that of the corporation. To infer the power to tax the one because the state taxes the other, would extend the power beyond all proper rules of construction.
I have thus adverted to all the reasons relied on to *392 justify the assessment of the tax in question; finding them wholly insufficient, it is not necessary to consider may be the effect (if any) of the clauses in the ra^ roa(t charters exempting them .from taxes or public c^arSes> ^ it should be necessary to rely on those clauses.
I am of opinion to affirm the judgment.
Lee, J.
was of opinion that the city council of Richmond had the power under the charter to tax stock held by her citizens in a rail road company wherever its works were constructed unless the same were specially exempted by its charter or some other valid legal provision. And he was of opinion that the stock of the Richmond and Petersburg rail road company was exempted by its charter from such taxation, as it was from taxation for state charges. But he was of opinion that the stock of the Seaboard and Roanoke rail road company was subject to taxation both for state and city charges, because he considered the exemption found in the charter of the Portsmouth and Roanoke rail road company as having been in effect repealed by the operation of the several acts subsequently passed in relation to that company, and the acceptance by the Seaboard and Roanoke rail road company of their provisions. And he was of opinion that the city council of Richmond might impose a tax upon stock held by her citizens in this company whether the general assembly had exercised the power of taxation which it possessed over the subject or otherwise.
He was therefore of opinion that the judgment should be reversed, and that in lieu thereof, judgment should be rendered in favor of the defendant in error for the sum of eighty-six dollars, that being the amount of the tax paid by him on his stock in the Richmond and Petersburg rail road, and the costs of the Circuit court.